IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **In re:** § § | | |
| **BONNIE RENEE ORTIZ and KEVIN PAUL ORTIZ,** § § § § | | **CASE NO. 09-10792-CAG** |
| | | **Chapter 7** |
| Debtors. § | | |

_____

| | | |
|---|---|---|
| **MATERIAL PRODUCTS INTERNATIONAL, LTD.,** § § § | | |
| Plaintiff, § § | | |
| v. § | | **ADVERSARY NO. 09-1062** |
| **BONNIE RENEE ORTIZ and KEVIN PAUL ORTIZ,** § § § § § | | |
| Defendants. § | | |

**DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTEREST.
IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE, NO HEARING WILL BE HELD AND THE RELIEF REQUESTED IN THE MOTION MAY BE GRANTED WITHOUT A HEARING BEING HELD. A TIMELY RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

TO THE HONORABLE CRAIG A. GARGOTTA, U.S. BANKRUPTCY JUDGE:

      COMES NOW BONNIE RENEE ORTIZ and KEVIN PAUL ORTIZ, defendants in the above captioned and numbered adversary proceeding (the "Defendants"), and file this their Motion for Judgment on the Pleading, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as made applicable through Federal Rule of Bankruptcy Procedure 7012.

STANDARD FOR MOTIONS
FOR JUDGMENT ON THE PLEADINGS

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A Rule 12(c) motion is designed to dispose of cases where the material facts are undisputed and a judgment on the merits may be rendered by examining the

substance of the pleadings and any judicially noticed facts. *Herbert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

Like a summary judgment, the court may enter judgment on the pleadings if the material facts show that the movants are entitled to prevail as a matter of law. *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973). This standard is roughly equivalent to that applied on a motion under Rule 12(b)(6) to dismiss for failure to state a claim. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002), *citing* 5A **Federal Practice and Procedure** § 1368 at 591 (Supp. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion.") (footnote omitted). In particular, when ruling on a motion for judgment on the pleadings, the court is required to assume that the allegations of fact presented by the opposing party are true and must draw all inferences in the light most favorable to the nonmoving party. *Great Plains*, 313 F.3d at 313. Although "[p]leadings should be construed liberally," *id.* (citation omitted), and while plaintiffs "need not provide specific facts in support of their allegations," *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (per curiam), "they must include sufficient factual information to provide the 'grounds' on which [their] claim rests . . . ." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1964-65 & n.3 (2007) (addressing dismissal under Rule 12(b)(6)). This, the Plaintiff in this case has failed to do.

This failure is even more egregious when, as here, the plaintiff's claim is one based on fraud under 11 U.S.C. § 523(a)(2). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b) (applicable to adversary proceedings by virtue of Fed.R.Bankr.P. 7009). "Bankruptcy courts should and do insist that the stringent standard imposed by Bankruptcy Rule 7009 be observed by parties claiming fraud, particularly if the party asserting fraud has first hand knowledge of the fraudulent transaction." *Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 439 (5th Cir. 1994).

Under Rule 9's particularity requirement, "[t]he allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993), *cited with approval by* **Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co.)**, 12 F.3d 426, 439 (5th Cir. 1994). In short, "[a]t a minimum[ Rule 9] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).

Relevant to this case are "the Rule 9(b) standards [that] require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (2005). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." **Admiral**

*Ins. Co. v. Heath Holdings USA, Inc.*, No. CIV.A. 3:03-CV-1634G, 2004 WL 1144062, *3 (N.D. Tex. May 21, 2004), *citing* **Hart v. Bayer Corporation**, 199 F.3d 239, 247 n.6 (5th Cir. 2000), *citing* **Tuchman v. DSC Communications Corp.**, 14 F.3d 1061, 1067 (5th Cir. 1994)), *cert. denied*, 522 U.S. 966 (1997).

As discussed in detail below, the Plaintiff in this case has failed to identify any statement by the Defendants that would satisfy the requirements of the statute upon which it bases its request for relief. The Plaintiff's Complaint therefore does not meet Rule 12(c)'s requirements, let alone the standard of particularity required under Rule 9(b). Because the Complaint shows that, even if all facts alleged are taken as true, Plaintiff cannot prevail, this adversary proceeding is ripe for judgment on the pleadings in the Defendants' favor.

REQUEST FOR JUDGMENT ON THE PLEADINGS

The Plaintiff in this case seeks allowance of its claim and a determination that it is non-dischargeable. In particular, the Plaintiff alleges that "[t]he debts [*sic*] owed to Material Products by the Debtors represents money that Debtors obtained by false pretenses, false representations and actual fraud as described above and should be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)." Complaint, para. 6. That subsection provides that

> [a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . .
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition [or]
> (B) use of a statement in writing . . . (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . ..

Thus, while Plaintiff cites § 523(a)(2) generally, it alleges only that the Debtors obtained money by "false pretenses, false representations and actual fraud"–i.e., only that its claim is non-dischargeable under §523(a)(2)(A). Plaintiff does not even mention the elements of § 523(a)(2)(B), let alone allege that the claim is non-dischargeable under that subsection.

Subsection 523(a)(2)(A) provides that the claim is non-dischargeable only if the false pretenses, a false representation, or actual fraud was by means "other than a statement respecting the debtor's or an insider's financial condition." Yet the only false pretenses, representation, and/or fraud alleged by Plaintiff in the Complaint is boilerplate language in the written security agreement between the parties (the "Security Agreement") to the effect that there were no liens encumbering the collateral claimed by the Plaintiff (the "Alleged Collateral"). Such a statement is indisputably "a statement respecting the debtor's . . . financial condition" and, therefore, excepted from statements actionable under §523(a)(2)(A).

"Because the term 'financial condition' is not defined in the Bankruptcy Code, . . . courts have

3

developed both broad and strict interpretations of what constitutes a statement respecting financial condition." *In re Chivers*, 275 B.R. 606, 614 (Bankr. D. Utah 2002); *see Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 501-05 (Bankr. S.D. N.Y. 1999) (describing broad and strict interpretations of statements respecting financial condition and cases in support thereof); *accord, Jokay Co. v. Mercado (In re Mercado)*, 144 B.R. 879, 881-86 (Bankr. C.D. Cal. 1992).

Historically, the broad interpretation of the term was the majority view.[1] *Chivers*, 275 B.R. at 614; *accord, Beneficial Nat'l Bank v. Priestley (In re Priestley)*, 201 B.R. 875, 882 (Bankr. D. Del. 1996). Under this approach, statements respecting financial condition include "statements concerning the condition or quality of a single asset or liability impacting on the debtor's financial picture." *Id.; accord, Alicea*, 230 B.R. at 502. *Id.* at 502-03. This viewpoint emphasizes that Congress did not limit the statutory language to false "financial statements," but instead referred to an arguably broader class of statements relating to financial condition. *Chivers*, 275 B.R. at 614. Courts adopting the broader approach do so

> to protect honest debtors from unscrupulous lenders. One of Congress's concerns was that institutional lenders deliberately took advantage of less-sophisticated debtors. One court described how lenders would "coax[] potential borrowers into submitting incomplete financial information" by providing too little space on the form to list the borrower's assets and liabilities and then have the customer certify that their financial statement was complete. When the debtor later filed bankruptcy, those unscrupulous lenders would challenge the discharge of that debt claiming the debtor was fraudulent. Broad-view courts want to protect honest debtors from being tricked into "presenting a false picture of [their] overall financial condition."

---

[1] *See e.g., Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060 (4th Cir. 1984) (Debtor's alleged oral representations that there were no prior liens on the livestock and farm implements he pledged to the creditor were statements respecting his financial condition); *Blackwell v. Dabney (In re Blackwell)*, 702 F.2d 490, 491 (4th Cir. 1983) (Debtor's alleged oral representations, such as statements that the business of a limited partnership that was an insider "was growing" and "successful," and that it was a "top-notch company," were statements respecting the debtor's insider's financial condition); *Beneficial Nat' Bank v. Priestley (In re Priestley)*, 201 B.R. 875 (Bankr. D. Del. 1996) (Debtor's omissions in his application for a loan to buy and renovate a building to sell as condominiums were misrepresentations of his financial condition, because they concerned a purchase deal for a large unit in the building, thereby misrepresenting the condition or quality of an asset used for collateral, which impacted on the debtor's financial picture.); *Chrysler First Fin. Serv. Corp. v. Rhodes (In re Rhodes)*, 93 B.R. 622 (Bankr. S.D. Ill. 1988) (Debtors' oral application for an extension of their loan, in which they failed to inform plaintiff of approximately $71,000.00 in debts owed to various creditors, was a statement respecting their financial condition.); *Conn. Nat'l Bank v. Panaia (In re Panaia)*, 61 B.R. 959 (Bankr. D. Mass. 1986) (Debtor's statement during his deposition concerning the amount of a prior lien on property he was pledging to the bank was a statement respecting the debtor's financial condition.); *United Virginia Bank v. Cook (In re Cook)*, 46 B.R. 545 (Bankr. E.D. Va. 1985) (Debtor's alleged oral representation that he owned certain was a statement respecting the debtor's financial condition.).

Joanna L. Radmall, *Note*, *"Dishonest Debtors and Dischargeable Debts in Bankruptcy: an Analysis of the Circuit Split Regarding the Interpretation of 11 U.S.C. § 523(a)(2)'s RespectingThe Debtor's . . . Financial Condition,"* 2007 Utah L. Rev. 841, 854 (footnotes and citations omitted) (the "***UTLR Note***").

Recently, courts have begun to favor a more "narrow interpretation that defines a statement of financial condition to be a statement of a debtor's net worth, overall financial health, or ability to generate income," and excludes a statement that concerns only a single asset.[2] ***Cadwell v. Joelson (In re Joelson)***, 427 F.3d 700, 709-10 (10th Cir. 2005); *accord*, ***Alicea***, 230 B.R. at 502 ("Under the so-called strict interpretation, subdivision (B) [also using "respecting the debtor's financial condition"] is limited to financial-type statements that are sufficient to determine the entity's overall financial responsibility, . . . but no specific formality is required.").

> Although it does not require any specific formality, the strict interpretation limits an actionable statement of financial condition to financial-type statements including balance sheets, income statements, statements of changes in financial position, or income and debt statements that provide what may be described as the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. ***Alicea***, 230 B.R. at 502. Cases supporting this view generally recite four arguments. First, they argue that the normal commercial meaning and usage of "'statement' in connection with 'financial condition' denotes either a representation of a person's [an entity's] overall 'net worth' or a person's [an entity's] overall ability to generate income." ***Mercado***, 144 B.R. at 885. Second, they cite to legislative history that references the statutes' application to the "'so-called false financial statement.'" ***Alicea***, 230 B.R. at 502; ***Mercado***, 144 B.R. at 883 (citing statements of Rep. Edwards and Sen. DeConcini for the proposition that "it seems more plausible that Congress intended application of § 523(a)(2)(B) to be limited to 'the so-called false financial statement.'"). Third, they argue that the strict interpretation promotes better bankruptcy policy, because narrowing the definition of financial condition in § 523(a)(2)(B) necessarily expands those statements, both written and oral, that do not relate to financial condition that fall within § 523(a)(2)(A) and better

---

[2] *See e.g.,* ***D. Nagin Mfg. Co. v. Pollina (In re Pollina)***, 31 B.R. 975 (D. N.J. 1983) (An oral misrepresentation that the inventory of a jewelry store was free and clear of any liens was not a statement respecting the debtor's insider's financial condition) (*dicta*); ***Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)***, 275 B.R. 606, 616 (Bankr. D. Utah 2002) (Letter, which debtor wrote to creditor who was interested in investing in the debtor's corporation, regarding sums allegedly expended on recycling facility that debtor represented would later be transferred to [the] corporation, and regarding a line of credit allegedly extended for the recycling operation, was not a statement respecting the debtor's or his insider's financial condition.); ***Alicea***, 230 B.R. at 504 (Debtor's fraudulent misrepresentation that his affiliates would pay the creditor's legal fees did not relate to their financial condition was not a statement respecting his or his affiliates' financial condition.); ***Zimmerman v. Soderlund (In re Soderlund)***, 197 B.R. 742 (Bankr. D. Mass. 1996) (Debtor's statements that she would make the installment payments required under a promissory note and, if necessary, would obtain additional employment or compensation to fulfill that commitment were not statements respecting her financial condition, but rather promises about her future behavior.); ***Benjelloun v. Robbins (In re Robbins)***, 178 B.R. 299, 304 (Bankr. D. Mass. 1995) (Debtor's statement regarding the value and net worth of a strip mall, only one of his numerous properties, was not a statement respecting his financial condition.).

5

harmonizes the statute. ***Bal-Ross Grocers, Inc., v. Sansoucy (In re Sansoucy)***, 136 B.R. 20, 23 (Bankr. D. N.H. 1992). Finally, they argue that a strict interpretation is consistent with the historical basis of § 523(a)(2)(B), which was designed to protect debtors from abusive lending practices. ***Field*** [***v. Mans***], 516 U.S. [59,] 76-77, 77 n. 13, 116 S. Ct. 437 (1995).

***Chivers***, 275 B.R. at 615.

Finally, a few courts have refrained from adopting any *per se* rule, instead finding that whether a statement is one "respecting a debtor's financial condition" should be determined in each case "by examining not only the nature of the statement, but the purpose for which the statement is sought and made."[3] ***Norcross v. Ransford (In re Ransford)***, 202 B.R. 1, 4 (Bankr. D. Mass. 1996); *accord,* ***Alicea***, 230 B.R. at 502 n.8.

Courts have applied each interpretation to statements regarding encumbrances on assets. Under any of these approaches, the statement in the Security Agreement in this case, that the Alleged Collateral was unencumbered, is a statement respecting the Debtors' or their insider's financial condition.

Those courts adopting the broad interpretation expressly agree that "[a] debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition. Indeed, whether his assets are encumbered may be the most significant information about his financial condition." *UTLR Note*, 2007 Utah L. Rev. at 859 n.82, *quoting* ***Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)***, 125 F. 3d 1358, 1361 (10th Cir. 1997), *quoting* ***Engler v. Van Steinburg (In re Van Steinburg)***, 744 F.2d at 1060-61. Those courts include the Fourth Circuit Court of Appeals in ***Engler v. Van Steinburg (In re Van Steinburg)***, 744 F.2d 1060 (4th Cir. 1984) (Debtor's alleged oral representations that there were no prior liens on the livestock and farm implements he pledged to the

---

[3] *See e.g.,* ***Ransford***, *supra*; ***Alicea***, *supra*; *see also* ***Jokay Co. v. Mercado (In re Mercado)***, 144 B.R. 879, 883-85 (Bankr. C.D. Cal. 1992).
In ***Ransford***, the debtors made oral statements that they still owned certain valuable real estate when they had reconveyed it to the prior owner, the debtor's father. The court held that those were statements respecting the debtors' financial condition, because their purpose was to reassure the seller of a business that if it failed, the debtors currently owned another asset that could satisfy their obligation as the purchasers of the business.
In ***Mercado,*** the debtor orally made statements and failed to disclose that the loan proceeds would be used not to complete the project in which the creditor was investing, but to pay a prior lien that was in default, and failed to disclose the true amount needed to complete the project. The court held that the debtor's oral misrepresentations and omissions were not statements respecting his financial condition, because his purpose in making the statements was not to provide information on his overall financial condition. Rather, the court found, it was to induce the creditor to purchase the property, and the creditor was relying not on the debtor's overall financial condition, but on the financial condition of the property, on the debtor's promise to complete the project within two months, and on the debtor's representation as to the funds necessary for completion. The court therefore held that the statements were not ones respecting the debtor's financial condition within the meaning of § 523(a)(2)(A).

6

creditor were statements respecting his financial condition), and the bankruptcy courts in **Conn. Nat'l Bank v. Panaia (In re Panaia)**, 61 B.R. 959 (Bankr. D. Mass. 1986) (Debtor's statement during his deposition concerning the amount of a prior lien on property he was pledging to the bank was a statement respecting the debtor's financial condition.), **Butler v. Roberts (In re Roberts)**, 54 B.R. 765 (Bankr. D. N.D. 1985) (Statements in a security agreement, in which the debtors assured the creditor that the horses they pledged as collateral were free of any other liens, were statements pertaining to the debtors' financial condition.) and **In re Phillips**, 27 B.R. 646, 647 (Bankr. M.D. Pa. 1982) (Where the debtors allegedly orally represented that the collateral, their equipment, was unencumbered, the court concluded that "[s]ince the instant case is a dispute regarding the debtors' encumbrances on their assets, this is a matter which concerns the financial condition of the debtors . . ..").

A few courts that apply the more narrow interpretation of § 523(a)(2)(A) to statements regarding encumbrances on assets, however, have found otherwise. *See e.g.,* **D. Nagin Mfg. Co. v. Pollina (In re Pollina)**, 31 B.R. 975 (D. N.J. 1983); **Resolution Trust Corp. v. Oliver (In re Oliver)**, 145 B.R. 303 (Bankr. E.D. Mo. 1992). Those cases, however, differ materially from this case.

In **Pollina** the court in *dicta* approved the bankruptcy court's holding that a statement, made both in a security agreement and orally, that the jewelry inventory of an insider of the debtor was not encumbered by prior liens, was not a statement respecting the debtor's insider's financial condition. In **Oliver** the court held that when the debtor orally represented that the collateral, his residence, was subject to only one prior lien, even though it actually was encumbered by two, he had not made a statement respecting his financial condition, and therefore that representation was actionable under § 523(a)(2)(A).

Both **Pollina** and **Oliver** are thus distinguishable from this case, because each involved collateral that was a single piece or a discreet unit of property. In contrast, the description in the Security Agreement of the Plaintiff's Alleged Collateral in this case–the "Restaurant known as Nuevo Leon located at 5900 D West Slaughter Lane, Austin, Texas"–is extremely broad and does not reasonably identify any item or even type of collateral. *See* Tex. Bus. & Comm. Code § 9.108(c) ("A description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral."). Although the Defendants strenuously contend that this description is not sufficiently detailed to even create a valid security interest, upon information and belief the Plaintiff asserts that it was granted a blanket lien covering virtually all the property used in the restaurant, which was at the time their sole means of generating income.[4] Even under a narrow interpretation of the phrase, a statement affecting such property would be a "statement respecting the debtor's financial condition."

---

[4] As discussed in the Defendants' Motion for Summary Judgment, the restaurant property was, in fact, owned by KBASO, LLC, a corporation created by the Defendants for the purpose of owning and running Nuevo Leon. The restaurant was therefore, indirectly through KBASO, LLC, the source of the

In *Bal-Ross Grocers, Inc., v. Sansoucy (In re Sansoucy)*, 136 B.R. 20, 23 (Bankr. D. N.H. 1992), in which the court adopted the narrow approach to the issue, it defined the phrase "financial condition" as used in § 523(a)(2)(A) and (B) by giving it "its normal commercial meaning, i.e., an equation of assets and liabilities." Courts also include under the more narrow interpretation statements of debtor's "net worth . . . and ability to generate income." *Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 709-10 (10th Cir. 2005). A statement by a debtor that virtually all of their business property is not encumbered is a statement that reflects both sides of the "equation of assets and liabilities," and is a statement that reflects their "ability to generate income." It is, therefore, a "statement respecting a debtor's financial condition" even under the more narrow interpretation of that phrase.

The statement in the Security Agreement in this case would also be considered one respecting the Defendants' financial condition under the third, case-by-case, approach in which the courts consider the debtor's purpose in making the statement. Courts adopting it have noted that under this approach,

> [when a] debtor was attempting to obtain loans and the overall financial condition of each was extremely relevant to the lender in granting the loan . . ., a misrepresentation regarding a material asset that would effect the evaluation of the overall financial condition of the debtor certainly fits within the parameters of § 523(a)(2)(B) [and thus is excluded from § 523(a)(2)(A)].

*Norcross v. Ransford (In re Ransford)*, 202 B.R. 1, 5 (Bankr. D. Mass. 1996), *quoting Mercado*, 144 B.R.at 884 (footnote omitted). In this case, the Plaintiff in its Complaint alleges in essence that its purpose in seeking the statement by the Defendants in the Security Agreement, and their purpose in making it, was to cause the Plaintiff to lend to the Defendants. Assuming that was its purpose (and the Defendants deny that it was), the overall financial condition of the Defendants would have been relevant to the Plaintiff in making the loan. Thus, if the Plaintiff's allegations are to be accepted as true–as they must, for purposes of this motion only–the Debtors' statement that the "Restaurant" was unencumbered is, as the bankruptcy court in *Mercado* described it, a statement that "would effect [*sic*] the evaluation of the overall financial condition of the debtor[s]." *Id.* at 883-85. It would, therefore, be a statement that "fits within the parameters of § 523(a)(2)(B)"– not § 523(a)(2)(A), as alleged by the Plaintiff in this case. *Id.*

Neither the Fifth Circuit Court of Appeals nor this Court has expressly adopted the broad, the narrow, or the case-by-case approach to the interpretation of what constitutes a "statement respecting the debtor's or an insider's financial condition" under § 523(a)(2). As the Court in *Norcross v. Ransford (In re Ransford)*, 202 B.R. 1, 4 (Bankr. D. Mass. 1996), noted, however, the "plain language of § 523(a)(2) does not require that the 'statement' be a traditional financial statement." *UTLR Note*, 2007 Utah L. Rev. at 859 n.84; *accord, Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 709-10 (10th Cir. 2005) ("Congress did not speak in terms of financial statements. Instead it referred to a much broader class of

---

Defendants' income.

statements–those 'respecting the debtor's . . . financial condition.'"), *quoting* **Bellco First Federal Credit Union v. Kaspar (In re Kaspar)**, 125 F.3d 1358, 1361 (10th Cir. 1997), *quoting with approval,* **Engler v. Van Steinburg (In re Van Steinburg)**, 744 F.2d 1060, 1061 (4th Cir. 1984).

      While it has not expressly addressed the scope of a "statement respecting a debtor's or insider's financial condition," the Fifth Circuit Court of Appeals's decision regarding the applicability of § 523(a)(2) to credit card use is consistent with the broad interpretation of that phrase. Under that approach, courts have included statements that reflect on the debtor's ability to pay as statements respecting a debtor's financial condition. *See* **AT&T Universal Card Svcs. v. Mercer (In re Mercer)**, 246 F.3d 391, 405 (5th Cir. 2001) (noting that "if [credit] card-use could be understood as a representation not only of intent, but also ability, to pay, the latter is not actionable under § 523(a)(2)(A); as noted, it excludes from its scope 'a statement respecting the debtor's . . . financial condition.'") (emphasis and footnote omitted); *see also* **Norcross v. Ransford (In re Ransford)**, 202 B.R. 1, 4 (Bankr. D. Mass. 1996) (characterizing, as one of those decisions in the "liberal interpretation camp" broadly interpreting "statement respecting the debtor's financial condition," **GM Card v. Cox (In re Cox)**, 182 B.R. 626, 629 (Bankr. D. Mass. 1995), *overruled on other grounds by* **A.T.&T. Universal Card Service Corp. v. Nguyen**, 208 B.R. 258 (D. Mass. 1997), in which the bankruptcy court found that an implied representation of a debtor's ability to pay a credit card debt was a statement respecting financial condition).

      Thus, even if the facts alleged in the Complaint are assumed to be true, Plaintiff cannot show its claim is non-dischargeable as alleged and its cause of action under § 523 should therefore be dismissed.[5] *See* **Paterno Imports, Ltd. v. McBee (In re McBee)**, 159 B.R. 461 (Bankr. E.D. Va. 1993). In *McBee*, the bankruptcy court dismissed the plaintiff's cause of action under § 523(a)(2)(A), in which it "allege[d]

---

[5] Dismissal is appropriate in this case, rather than granting leave to the Plaintiff to amend its Complaint, because its failure to state a claim is not merely procedural:

> [B]ecause the ground for the motion for judgment on the pleadings is the nonmovant's failure to state a claim, and the nonmovant includes in its opposition papers a request to amend the pleadings if they are found deficient, one district court has suggested that a finer analysis is necessary. Under these circumstances, the court must distinguish between failure to state a claim for substantive reasons and failure to state a claim for procedural reasons. When the moving party's challenge to the nonmovant's claim is substantive, the movant, as mentioned above, is entitled to judgment on the pleadings. On the other hand, when the challenge to the nonmovant's claim is procedural, the nonmoving party may be afforded an opportunity to amend the pleadings, provided the party meets the usual requirements for amendment.

2 *Moore's Federal Practice*, § 12.38 (Matthew Bender 3d ed. 2008) (citations omitted).

that defendant made oral representations that his personal net worth was approximately $1,600,000.00 and that the assets listed on his financial statement were his alone." The court dismissed because it found that such statements were statements respecting the debtor's financial condition and they therefore "cannot serve as a basis for nondischargeability under § 523(a)(2)(A)." *Id.*, citing *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060 (4th Cir. 1984) and *United Virginia Bank v. Cook (In re Cook)*, 46 B.R. 545 (Bankr. E.D. Va. 1985). Similarly, in *Chrysler First Fin. Serv. Corp. v. Rhodes (In re Rhodes)*, 93 B.R. 622 (Bankr. S.D. Ill.1988), the court granted the debtors' motion for judgment on the pleadings pursuant to Rule 12(c). The court granted judgment because the complaint alleged only that the debt was excepted from discharge under § 523(a)(2)(A), and the court found that the debtors' failure to inform the lender of the existence of approximately $71,000 in debts owed to other creditors were statements respecting the debtors' financial condition.

As a matter of law, therefore, taking all Plaintiff's allegations in the Complaint as true, it cannot show that the claim is non-dischargeable under § 523(a)(2)(A) as it alleges, and Defendants are entitled to judgment on the pleadings denying the Plaintff's cause of action requesting that the claim be declared non-dischargeable. In light of such denial of its dischargeability action, the Plaintiff's cause of action for liquidation of its claim should also be dismissed.

First, dismissal is appropriate because continuation of an action on a discharged debt is enjoined under § 524(a)(2).[6]

> Under the rulings just made, the Plaintiffs may not maintain a dischargeability proceeding against the Debtors. All of their requests for a determination of nondischargeability will be dismissed pursuant to Rule 12(b)(6). The Plaintiffs' claims for damages under nonbankruptcy law then will be subject to the effect of discharge under Chapter 7; so those counts must be dismissed as barred by 11 U.S.C. § 524(a)(1).

*Murrin v. Scott (In re Scott),* 403 B.R. 25, 46 (Bankr. D. Minn. 2009).

Second, the amount of the discharged claim is simply a moot issue insofar as the Defendants are concerned. Only to the extent the claim may be administered in the bankruptcy estate is its amount and allowance material. In that case the Trustee, and not the Debtors, is the true party in interest and the Plaintiff's action should be dismissed at least as to the Debtors.

---

[6] That subsection provides that "[a] discharge . . . operates as an injunction against the commencement or continuation of an action . . . or an act, to collect, recover or offset any [debt discharged under section 727] as a personal liability of the debtor, whether or not discharge of such debt is waived."

CONCLUSION

"[E]xceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." **Hudson v. Raggio & Raggio, Inc. (In re Hudson)**, 107 F.3d 355, 356 (5th Cir. 1997). The distinction between subsections (a)(2)(A) and (a)(2)(B) of § 523 is well-established and not complex. This is not a case where a plaintiff is unable to comprehend the statute because of her/his lack of sophistication or because s/he is acting pro se, or where the facts are so complex that the applicability of one subsection (or, rather, its inapplicability) to those facts is not clear. The Defendants should not be required to suffer the expense of discovery to ferret out the basic facts that Plaintiff contends support its claim, particularly when that claim is based on fraud. Nor should they, as debtors, have to suffer the delay in receiving their discharge that further litigation of this adversary proceeding would impose. As was the case in **Scott**, 403 B.R. at 33,

> [i]t is fair to presume that the Debtors filed for bankruptcy to relieve themselves of the burden of their pre-petition debt, including the transactional costs attendant to fixing and liquidating any such liabilities that they contested; so they are not at all out of line in making the motion at bar, as an effort to gain the practical benefit of discharge for themselves as early as possible.

Thus, as the Complaint on its face and the plain language of § 523(a)(2)(A) show, Defendants are entitled to the entry, without further delay, of judgment under Rule 12(c) denying the Plaintiff's request that its claim be declared non-dischargeable and dismissing, as discharged, its action against the Defendants to liquidate that claim.

WHEREFORE, PREMISES CONSIDERED, the Defendants herein respectfully pray that the Court grant their Motion for Judgment on the Pleadings and deny the Plaintiff's request for a declaration that its claim is non-dischargeable, dismiss the Plaintiff's remaining cause of action for a determination of the amount of the claim, without prejudice to its bringing the latter action against the Trustee, the true party in interest with respect to the liquidation of a dischargeable claim, and grant the Defendants such other and further relief, both general and specific, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

THE LAW OFFICES OF
DOUGLAS J. POWELL, P.C.
820 West 10th Street
Austin, Texas 78701
Telephone: (512) 476-2457
Facsimile: (512) 477-4503


  /s/ Douglas J. Powell
Douglas J. Powell
Texas Bar No: 16194900
Email: djpowell@swbell.net


**CERTIFICATE OF SERVICE**

By my signature below, I hereby certify that on this 26th day of January, 2010, notice of the filing of the foregoing Motion for Judgment on the Pleadings was served via the CM/ECF noticing system, andse a true and correct copy of the Motion was sent via first class mail, postage prepaid, to the following:

Lynn Hamilton Butler
Brown McCarrol, L.P.
111 Congress Ave., Suite 1400
Austin, TX 78701-4043

Dan Roberts, Chapter 7 Trustee
1602 East Cesar Chavez Street
Austin, TX 78702-4456

United States Trustee
903 San Jacinto, Suite 230
Austin, TX 78701


  /s/ Douglas J. Powell
  Douglas J. Powell
  Attorney for Defendants