

**SIGNED this 27th day of August, 2010.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-10792-CAG |
| | § | |
| BONNIE RENEE ORTIZ and | § | |
| KEVIN PAUL ORTIZ, | § | CHAPTER 7 |
|     Debtors. | § | |

| | | |
|---|---|---|
| MATERIAL PRODUCTS | § | ADV. NO. 09-01062- CAG |
| INTERNATIONAL, LTD. | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BONNIE RENEE ORTIZ and | § | |
| KEVIN PAUL ORTIZ, | § | |
|     Defendants. | § | |

**MEMORANDUM OPINION REGARDING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

Came on to be considered on March 10, 2010, the Defendants' Pleadings, the Plaintiff's Response thereto, and the Defendants' Reply. For the reasons stated herein, the Motion is GRANTED.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a)(1) and § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate) and (I) (determinations as to the dischargeability of debt). Venue is proper under 28 U.S.C. § 1409(a). This matter is referred to this Court under the District's Standing Order on Reference.

**BACKGROUND**

Debtors filed their petition for Chapter 7 relief on March 31, 2009. Plaintiff filed its Original Complaint Seeking Determination of Non-Dischargeability of Debts Under Bankruptcy Code § 523 on July 7, 2009 (docket #1). Defendants timely filed their Original Answer on August 17, 2009. The uncontroverted allegations of the Complaint indicate that the Defendants executed a secured promissory note for $100,000 and security agreement in favor of Plaintiff. Complaint ¶ 4. The description for the collateral of the loan is: the restaurant known as Nuevo Leon located at 5900D West Slaughter Lane, Austin, Texas. *Id*. The Defendants defaulted on the promissory note and owe Plaintiff the sum of $81,685.27, including principal and interest, and all offsets and credits. Complaint ¶¶ 4 and 5.

The Defendants deny that in the security agreement the Defendants represented that the restaurant was not subject to any other security agreement or instrument. Complaint ¶ 5. The Defendants do admit that the collateral was subject to a security agreement executed on or about June 28, 2005, in favor of Davila Family Partnership, Ltd. *Id*. The restaurant also was subject to a loan agreement with Rachel Davila. *Id*. The Plaintiff alleges, and the Defendants deny, the following allegations in the Original Complaint:

> The Debtors knew at the time they made the representations regarding the Collateral to Materials Products that the Collateral was subject to other security agreements. The Debtors knew that the representations were material to the Plaintiff. The Debtors made these representations with the intent that Materials

2

> Products rely upon and act on the representations. Materials Products relied upon these representations when it entered into the promissory note and security agreement. Due to the Debtors' misrepresentations regarding the Collateral, Materials Products has been damaged in the principal amount of $81,685.27.

Complaint ¶ 5.

Further, as the grounds for denying the discharge of Defendants' debt, Plaintiff alleges, and Defendants deny, the following:

> The debts owed to Materials Products by the Debtors represents money that Debtors obtained by false pretenses, false representations and actual fraud as described above and should be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2). Debtors secured the loan from Materials Products by providing fraudulent misrepresentations, including but not limited to the representation that the Collateral was unencumbered by any security interest or agreement, when, in reality, the Collateral was previously encumbered.
>
> Debtors made the foregoing representations with actual knowledge that they were false or with reckless disregard for the truth. Debtors made the representations with the actual intent not to perform their promises with the intent that Materials Products would rely on the misrepresentations in order to loan the Debtors the money. Materials Products relied on the Debtors' misrepresentations to its detriment and suffered damages as a direct and proximate cause of Debtors fraudulent conduct. For these reasons, Materials Products' damages resulting from Debtors' fraud should be excepted from discharge under Bankruptcy Code § 523(a)(2).

Complaint ¶¶ 6, 7.

Notably, the Plaintiff does not distinguish in the Complaint whether the dischargeability of debt is sought under § 523(A) or (B). This lack of distinction and failure to plead with particularity is fatal to Plaintiff's Original Complaint.

### **DEFENDANTS' RULE 12(C) MOTION**

The Defendants filed their Motion for Judgment on the Pleadings on January 26, 2010 (docket #20). The Motion is premised on Fed.R.Civ.P. 12(c), which is incorporated in Fed.R.Bank.P. 7012(c). Rule 12(c) states that "[a]fter the pleadings are closed – but early

3

enough not to delay trial – a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).

A Rule 12(c) motion is designed to dispose of cases where the material facts are undisputed and a judgment on the merits may be rendered by examining the substance of the pleadings and any judicially noticed facts. *Herbert Abstract Co. v. Touchstone Prop., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The court may enter judgment on the pleadings if the material facts show that the movants are entitled to prevail as a matter of law. *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973). This standard is roughly equivalent to that applied on a motion under Rule 12(b)(6) to dismiss for failure to state a claim. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002), *citing* 5A FEDERAL PRACTICE AND PROCEDURE 1368 at 591 (Supp. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion.") (footnote omitted). Therefore, when ruling on a motion for judgment on the pleadings, the court is required to assume that the allegations of fact presented by the opposing party are true and must draw all inferences in the light most favorable to the nonmoving party. *Great Plains*, 313 F.3d at 313. Although [p]leadings should be construed liberally, *id.* (citation omitted), and while plaintiffs need not provide specific facts in support of their allegations, *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (per curiam), they must include sufficient factual information to provide the grounds' on which [their] claim rests. . . . *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 & n.3 (2007) (addressing dismissal under Rule 12(b)(6)).

Further, the Defendants correctly point out that Rule 9 places a duty on a plaintiff to plead with particularity when a claim is based on fraud. "In alleging fraud or mistake, a party

4

must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b) (applicable to adversary proceedings by virtue of Fed.R.Bank.P. 7009). *Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 439 (5th Cir. 1994). Under Rule 9's particularity requirement, "[t]he allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993), *cited with approval by* *Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 439 (5th Cir. 1994). In short, "[a]t a minimum [Rule 9] requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).

### PARTIES' CONTENTIONS

The Defendants argue in their Motion that the Plaintiff has not met its burden of pleading with sufficient particularity under Rule 9 to state a claim for relief under Section 523(a)(2)(A). Further, Defendants argue that the statements in the security agreement more closely approximate a statement respecting a debtor's financial condition which would be actionable under § 523(a)(2)(B). Defendants allege that nowhere in Plaintiff's Complaint does Plaintiff even state the elements under § 523(a)(2)(B).[1] Therefore, based upon the allegations in the Original Complaint which are deemed true for purposes of evaluating a Rule 12(c) motion, the Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Plaintiff's Response argues that the Original Complaint is filed under Section 523(a)(2), and, as such, encompasses both Section 523(a)(2)(A) and (B) (docket #23). Further, Plaintiff

---

[1] At the hearing on the Defendants' Motion for Judgment on the Pleadings, the Court noted that the Plaintiff had not sought leave to amend their Complaint, particularly as to § 523(a)(2)(B). The Court questioned Plaintiff's counsel about the propriety of filing a motion for leave under Rule 15 to file an amended complaint invoking § 523(a)(2)(B) as a basis for a cause of action. Plaintiff's counsel indicated that no amendment would be forthcoming nor has one been filed.

5

maintains that Defendants' statements do not fit under the paradigm of Section 523(a)(2)(B) and must be considered under Section 523(a)(2)(A). Plaintiff also states that it has met the pleading requirements of Rules 8 and 9 and that it has met the "plausibility" requirements as mandated in the Supreme Court's decisions of **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544 (2007) and **Ashcroft v. Iqbal**, 129 S.Ct. 1937 (2009). Plaintiff further maintains that it has met its burden of pleading with particularity under Rule 9 because it properly pled fraud and outlined the time, place, and contents of the false representations, along with the identity of the persons making the false representations. Response ¶ 12. Finally, Plaintiff asks in the alternative that it be granted leave to amend its Complaint under Rule 9(b) to further plead with particularity to cure any defects in its Complaint.

## ANALYSIS

Section 523(a) states:

> (a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . .
>
> (2) for money, property, services, or an extension, removal, or refinancing of credit, to the extent obtained by --

Section 523(a)(2)(A) and (B) state:

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (B) use of a statement in writing –
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debt – or is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive.

As such, the Tenth Circuit has found that the difference between Section 523(a)(2)(A) and (B) may be explained as:

6

> Specifically, 11 U.S.C. § 523(a)(2)(A) states that a debt obtained by "false pretenses, a false representation, or actual fraud" is not dischargeable. However, § 523(a)(2)(A) contains an exception: If a debt is obtained by a false oral "statement respecting the debtor's . . . financial condition," the debt is dischargeable. By contrast, 11 U.S.C. § 523(a)(2)(B) states that a debt obtained by a false written statement "respecting the debtor's . . . financial condition" is not dischargeable, provided certain conditions are met.

***Cadwell v. Joelson (In re Joelson)***, 427 F.3d 700, 704 (10th Cir. 2005).

The Tenth Circuit noted that both section 523(a)(2)(A) and 523(a)(2)(B) use the phrase "respecting the debtor's . . . financial condition" and that both sections were enacted as part of the original statute. *Id*. The Tenth Circuit then noted that although (A) and (B) use similar language, Section 523(a)(2)(A) provides that a false oral statement respecting the debtor's financial condition is dischargeable, while Section 523(a)(2)(B) provides that a debt obtained by a false written statement of the same version is not dischargeable. *Id*. Therefore, whether the statement is oral or written may determine if the statement is dischargeable. *Id*.

The Tenth Circuit also noted that:

> The phrase "respecting the debtor's . . . financial condition" has a range of potential meanings. . . . [M]any of the courts who have considered this issue refer to as the "broad interpretation," a statement "respecting the debtor's . . . financial condition" is any communication that has a bearing on the debtor's financial position. *Id*. *citing* ***Skull Valley Band of Goshute Indians v. Chivers (In re Chivers),*** 275 B.R. 606, 614 (Bankr. D. Utah 2002). Thus, the broad interpretation posits that a communication addressing the status of a single asset or liability qualifies as "respecting the debtor's . . . financial condition." *See id*.

> Under what courts refer to as the "strict interpretation," a statement "respecting the debtor's . . . financial condition" is any communication that presents an overall picture of the debtor's financial position. *Id.* at 615. This interpretation limits statements "respecting the debtor's . . . financial condition" to communications that purport to state the debtor's overall net worth, overall financial health, or equation of assets and liabilities. *See id*.

Prior to the Tenth Circuit's ruling in ***Joelson***, courts had employed a broader interpretation of the phrase respecting the debtor's financial condition. The Defendants noted in their Motion that the broad interpretation of the term was the majority view. ***Chivers***, 275 B.R.

7

at 614; *accord,* **Beneficial Nat'l Bank v. Priestley (In re Priestley)**, 201 B.R. 875, 882 (Bankr. D. Del. 1996). Those decisions held that statements respecting financial condition include "statements concerning the condition or quality of a single asset or liability impacting on the debtor's financial picture." *Id.; accord,* **Alicea**, 230 B.R. at 502. *Id.* at 502-03. This viewpoint emphasizes that Congress did not limit the statutory language to false "financial statements," but instead referred to a broader class of statements relating to financial condition. **Chivers**, 275 B.R. at 614. Courts adopting the broader approach do so

> to protect honest debtors from unscrupulous lenders. One of Congress's concerns was that institutional lenders deliberately took advantage of less-sophisticated debtors. One court described how lenders would "coax[] potential borrowers into submitting incomplete financial information" by providing too little space on the form to list the borrower's assets and liabilities and then have the customer certify that their financial statement was complete. When the debtor later filed bankruptcy, those unscrupulous lenders would challenge the discharge of that debt claiming the debtor was fraudulent. Broad-view courts want to protect honest debtors from being tricked into "presenting a false picture of [their] overall financial condition."

Joanna L. Radmall, *Note*, "*Dishonest Debtors and Dischargeable Debts in Bankruptcy: an Analysis of the Circuit Split Regarding the Interpretation of 11 U.S.C. 523(a)(2)'s Respecting The Debtor's . . . Financial Condition,*" 2007 Utah L. Rev. 841, 854 (footnotes and citations omitted) (the "*UTLR Note*").

Recently, courts have begun to favor a more "narrow interpretation that defines a statement of financial condition to be a statement of a debtor's net worth, overall financial health, or ability to generate income," and excludes a statement that concerns only a single asset. **Joelson**, 427 F.3d at 709-10; *accord,* **Alicea**, 230 B.R. at 502 ("Under the so-called strict interpretation, subdivision (B) [also using "respecting the debtors financial condition"] is limited to financial-type statements that are sufficient to determine the entity's overall financial responsibility, . . . but no specific formality is required.").

> Although it does not require any specific formality, the strict interpretation limits an actionable statement of financial condition to financial-type statements including balance sheets, income statements, statements of changes in financial position, or income and debt statements that provide what may be described as the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. *Alicea*, 230 B.R. at 502. Cases supporting this view generally recite four arguments. First, they argue that the normal commercial meaning and usage of "'statement' in connection with 'financial condition' denotes either a representation of a person's [an entity's] overall 'net worth' or a person's [an entity's] overall ability to generate income. *Mercado*, 144 B.R. at 885. Second, they cite to legislative history that references the statutes' application to the "'so-called false financial statement.'" *Alicea*, 230 B.R. at 502; *Mercado*, 144 B.R. at 883 (citing statements of Rep. Edwards and Sen. DeConcini for the proposition that "it seems more plausible that Congress intended application of 523(a)(2)(B) to be limited to 'the so-called false financial statement.'"). Third, they argue that the strict interpretation promotes better bankruptcy policy, because narrowing the definition of financial condition in 523(a)(2)(B) necessarily expands those statements, both written and oral, that do not relate to financial condition that fall within 523(a)(2)(A) and better harmonizes the statute. *Bal-Ross Grocers, Inc., v. Sansoucy (In re Sansoucy)*, 136 B.R. 20, 23 (Bankr. D. N.H. 1992). Finally, they argue that a strict interpretation is consistent with the historical basis of 523(a)(2)(B), which was designed to protect debtors from abusive lending practices. *Field* [*v. Mans*], 516 U.S. [59,] 76-77, 77 n. 13, 116 S. Ct. 437 (1995).

*Chivers*, 275 B.R. at 615.

Those courts adopting the broad interpretation agree that "[a] debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition. Indeed, whether his assets are encumbered may be the most significant information about his financial condition." UTLR Note, 2007 Utah L. Rev. at 859 n.82, *quoting* ***Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)***, 125 F. 3d 1358, 1361 (10th Cir. 1997), *quoting* ***Engler v. Van Steinburg (In re Van Steinburg)***, 744 F.2d at 1060-61. Those courts include the Fourth Circuit Court of Appeals in ***Engler v. Van Steinburg (In re Van Steinburg)***, 744 F.2d 1060 (4th Cir. 1984) (Debtors alleged oral representations that there were no prior liens on the livestock and farm implements he pledged to the creditor were statements respecting his financial condition), and the bankruptcy courts in ***Conn. Natl Bank v. Panaia (In re Panaia)***, 61 B.R. 959 (Bankr. D. Mass. 1986) (Debtor's statement during his deposition concerning the

9

amount of a prior lien on property he was pledging to the bank was a statement respecting the debtor's financial condition.), ***Butler v. Roberts (In re Roberts)***, 54 B.R. 765 (Bankr. D. N.D. 1985) (Statements in a security agreement, in which the debtors assured the creditor that the horses they pledged as collateral were free of any other liens, were statements pertaining to the debtors' financial condition). As such, these courts would hold that the statement in the security agreement in this matter regarding the Defendants' restaurant's financial statement actionable under § 523(a)(2)(B).

The Plaintiff argues that the *Joelson* decision correctly interpreted the phrase "a statement regarding the debtor's financial condition" in holding that a strict interpretation of the phrase is the proper interpretation when applying it to Section 523(a)(2)(B). The Plaintiff posits that this is significant because *Joelson* was appealed to the Supreme Court and the appellant's petition for certiorari was denied on the issue of the proper interpretation of the financial condition phrase. The Supreme Court nonetheless denied certiorari in light of an apparent split of circuit-level authority where the Fourth Circuit had previously adopted a broader interpretation of the phrase "a statement respecting the debtor's . . . financial condition."

In *Joelson*, the Tenth Circuit evaluated (1) the legislative history of Sections 523(a)(2)(A) and (a)(2)(B); (2) the prior use of the "financial condition" phrase in the Bankruptcy Act; (3) the use of the phrase in the other sections of the Code; and (4) other cases which interpreted the phrase "a statement respecting the debtor's . . . financial condition." *Joelson*, 427 F.3d at 707-14. The Tenth Circuit held that a strict interpretation was proper and that the phrase "a statement respecting the debtor's . . . financial condition" means statements that

> . . . purport to present a picture of a debtor's financial health. Statements that present a picture of a debtor's overall financial health include those analogous to

10

> balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. . . . What is important is not the formality of the statement, but the information contained within it -- information as to the debtor's or insider's overall net worth or overall income flow.

*Id.* at 714.

Under ***Joelson***, the Plaintiff argues that the Defendants' statement in the security agreement regarding that the restaurant was the collateral for the loan would not be a statement under Section 523(a)(2)(B), but rather a statement under Section 523(a)(2)(A).

Based on the arguments of parties, the Court can make its conclusions of law based upon the pleadings filed. First, the Court finds unpersuasive Plaintiff's assertion that in filing its Original Complaint under Section 523(a)(2), the Plaintiff incorporated sections (A) and (B). Nowhere in the Original Complaint does the Plaintiff cite Section 523(a)(2)(B) nor does the Plaintiff even cite or list the elements of Section 523(a)(2)(B). Moreover, the Supreme Court has now on at least two occasions commanded plaintiffs to file complaints that state plausible causes of action with particularity. The failure to cite specifically § 523(a)(2)(B) or state the elements of Section 523(a)(2)(B) conclusively establishes that Plaintiff's Original Complaint can only be considered in the context of Section 523(a)(2)(A).

This Court previously had written on the plausibility standard under Rule 8 as it related to Rule 12(b)(6) motion. See ***Douglass v. Langehennig (In re Douglass)***, No. 08-01007, 2008 WL 2944568 (Bankr. W.D.Tex. July 25, 2008). As noted herein, a Rule 12(c) motion is analogous to a 12(b)(6) motion for failure to state a claim upon which relief can be granted. In ***Douglass***, this Court found that Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . ." ***Bell Atl.***

11

*Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In *Bell Atlantic,* the Supreme Court recently restated the pleading standard, requiring that in order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.,* 127 S.Ct. at 1974.

Since the *Bell Atlantic* decision, courts have struggled with how to apply the decision's more rigorous "plausibility" standard in place of the previous "no set of facts" standard articulated in *Conley*. *See generally* Allan Ides, *"Bell Atlantic and the Principle of Substantive Sufficiency Under Federal Rule of Civil Procedure 8(a)(2): Toward a Structured Approach to Federal Pleading Practice,"* 243 F.R.D. 604 (2006) (hereinafter "Structured Approach"). Some commentators and courts have questioned whether the Supreme Court in *Bell Atlantic* intended its ruling to apply to any cause of action alleged or be limited to the particular cause of action (perhaps even the particular element of that cause of action) that it addressed in the case before it. *Structured Approach* at 31 ("the 'better' reading of *Bell Atlantic* is that it did not change the law of pleading, but that it simply applied long-accepted pleading standards to a unique body of law under which the plaintiffs' complaint failed to include any facts or plausible inferences supportive of a material element of the claim specifically asserted by the plaintiffs"); *Iqbal v. Hasty,* 490 F.3d 143, 156 (2d Cir.2007).

After the *Twombly* decision, this Court noted in *Douglass v. Langehennig* that a number of courts struggled with how to apply *Twombly* to a variety of causes of action. Thereafter in *Iqbal v. Ashcroft*, the Supreme Court resolved the issue by finding that the "plausibility" requirement applied to all civil causes of action. 129 S.Ct. 1937, 1953 (2009).

Here, the Plaintiff's assertion that it pled Section 523(a)(2)(B) does not withstand closer scrutiny. The Plaintiff never mentions § 523(a)(2)(B) in the Complaint, either by citation or by

addressing its elements. In contrast, Plaintiff identifies § 523(a)(2)(A) by quoting it, verbatim. To assert that § 523(a)(2)(B) is pled is contrary to the facts.

Subsections § 523(a)(2)(A) and (a)(2)(B) define similar, *but nevertheless different*, causes of action. *See* **Field v. Mans**, 516 U.S. 59, 64 (1995) ("11 U.S.C. § 523(a) . . . carries 16 subsections setting out categories of nondischargeable debts [and t]wo of these are debts traceable to falsity or fraud or to a materially false financial statement, as set out in § 523(a)(2). . . ."). The Supreme Court in *Field v. Mans* reviewed the independent histories of the two provisions and noted the "significance of a historically persistent textual difference between the substantive terms in §§ 523(a)(2)(A) and (B)[, in that] the former refer to common-law torts, and the latter do not." *Id*. at 68-69. The Court then described § 523(a)(2)(A) and § 523(a)(2)(B) as:

> two close statutory companions barring discharge. One applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition), the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied.

*Id*. at 66. In further acknowledgment of the differences between the two provisions, the Court went on to hold that a different standard of reliance applied to each. Given the distinctions between the two, mere citation to "§ 523(a)(2)" is insufficient to plead both causes of action, particularly where there is no reference to one of them -- § 523(a)(2)(B) -- and the other is quoted verbatim.

Second, the Court finds unpersuasive Plaintiff's suggestion that it should be granted leave to amend its Complaint to cure any deficiencies. Plaintiff refers to Rule 9(b) and its requirement that a claim should not be dismissed "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Steves & Sons, Inc. v. Trinity Glass Int'l, Inc.*, 2007 U.S. Dist.

13

LEXIS 382361 (W.D. Tex. May 25, 2007). The Defendants respond by noting that Rule 9 is inapplicable to motions filed under Rule 12(c).

Defendants correctly note that their Motion for Judgment on the Pleadings requests relief under Federal Rule of Procedure 12(c), the purpose of which is not to clarify vague pleadings but rather "to dispose of cases where the material facts are undisputed and a judgment on the merits may be rendered by examining the substance of the pleadings and any judicially noticed facts." ***Herbert Abstract Co. v. Touchstone Properties, Ltd.***, 914 F.2d 74, 76 (5th Cir. 1990). Dismissal, not leave to amend, is appropriate here because of the substantive deficiency in Plaintiff's pleading – its failure to plead facts supporting non-dischargeability on the grounds it cites, § 523(a)(2)(A). Also, the Plaintiff's request to amend should be stricken simply because it is improperly made in a responsive pleading. Fed.R.Bankr.P. 9013 ("A request for an order, except when an application is authorized by these rules, shall be by written motion, unless made during a hearing").

Finally, the Court must consider the merits of the parties' arguments as to whether the security agreement at issue and the representations regarding the Defendants' restaurant are actionable under Section 523(a)(2)(A) or Section 523(a)(2)(B). If the security agreement at issue qualifies as a statement regarding the debtors' financial condition under a broad reading of Section 523(a)(2)(B), then the Plaintiff's complaint must be dismissed because the complaint was not filed under Section 523(a)(2)(B). Conversely, if the Court adopts the reasoning of ***Joelson*** and applies a stricter reading of the statute, then the Plaintiff can pursue its cause of action under Section 523(a)(2)(A).

Plaintiff identifies two bases for this Court finding that this matter is actionable under Section 523(a)(2)(A): the Tenth Circuit's holding that the emerging view is a strict reading of

14

the statute and that the Supreme Court did not grant certiorari when *Joelson* was appealed to the Court even though the Fourth Circuit had previously adopted the broad interpretation of Section 523(a)(2)(B) in a prior opinion. The Plaintiff posits that because the Supreme Court denied certiorari in *Joelson*, the Court tacitly approved *Joelson's* holding that a strict reading regarding the debtor's financial condition under Section 523(a)(2)(B) should be applied.

The Court disagrees with the Plaintiff's arguments. First, the Court is unconvinced that the stricter view should be applied in this context. As the Defendants have demonstrated, statements regarding a debtor's real property and encumbrances thereto would necessarily be construed as a statement concerning the debtor's financial condition under Section 523(a)(2)(B). *See e.g. **Fed. Credit Union v. Kaspar (In re Kaspar)***, 125 F.3d at 1341; ***Engler v. Van Steinberg (In re Van Steinberg)***, 744 F.2d at 1060-61. Second, the fact that the Supreme Court denied certiorari in *Joelson* is not dispositive in this context. Rather, what the Fifth Circuit might do in this context is how this Court should evaluate this issue.

The parties readily agree that the Fifth Circuit has not addressed this issue. That said, the Court agrees with the Defendants that the Fifth Circuit's opinion in ***AT&T Universal Card Svcs. v. Mercer (In re Mercer)***, 246 F.3d 391, 405 (5th Cir. 2001) is suggestive of how the Fifth Circuit might rule.

The Court agrees with the Defendants' assertion that while it has not expressly addressed the scope of a "statement respecting a debtor's or insider's financial condition," the Fifth Circuit Court of Appeals's decision regarding the applicability of § 523(a)(2) to credit card use is consistent with the broad interpretation of that phrase. Under that approach, courts have included statements that reflect on the debtor's ability to pay as statements respecting a debtor's financial condition. *See **Mercer***, 246 F.3d at 405 (5th Cir. 2001) (noting that "if [credit] card-use

15

could be understood as a representation not only of intent, but also ability, to pay, the latter is not actionable under § 523(a)(2)(A); as noted, it excludes from its scope 'a statement respecting the debtor's . . . financial condition.'") (emphasis and footnote omitted); *see also* **Norcross v. Ransford (In re Ransford)**, 202 B.R. 1, 4 (Bankr. D. Mass. 1996) (characterizing, as one of those decisions in the "liberal interpretation camp" broadly interpreting "statement respecting the debtor's financial condition," **GM Card v. Cox (In re Cox)**, 182 B.R. 626, 629 (Bankr. D. Mass. 1995), *overruled on other grounds by* **AT&T Universal Card Service Corp. v. Nguyen**, 208 B.R. 258 (D. Mass. 1997), in which the bankruptcy court found that an implied representation of a debtor's ability to pay a credit card debt was a statement respecting financial condition).

Therefore, as a matter of law, taking all Plaintiff's allegations in the Complaint as true, Plaintiff cannot show that the claim is non-dischargeable under § 523(a)(2)(A) as it alleges, and the Defendants are entitled to judgment on the pleadings denying the Plaintiff's cause of action requesting that the claim be declared non-dischargeable. In light of such denial of its dischargeability action, the Plaintiff's cause of action for liquidation of its claim is also dismissed. Dismissal is appropriate because continuation of an action on a discharged debt is enjoined under § 524(a)(2).[2] **Murrin v. Scott (In re Scott)**, 403 B.R. 25, 46 (Bankr. D. Minn. 2009). A separate judgment will be entered reflecting the Court's ruling.

# # #

---

2 That subsection provides that "[a] discharge . . . operates as an injunction against the commencement or continuation of an action . . . or an act, to collect, recover or offset any [debt discharged under section 727] as a personal liability of the debtor, whether or not discharge of such debt is waived."