

**SIGNED this 24th day of August, 2012.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-10792-CAG |
| | § | |
| BONNIE RENEE ORTIZ and, | § | |
| KEVIN PAUL ORTIZ | § | CHAPTER 7 |
| | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| MATERIALS PRODUCTS | § | |
| INTERNATIONAL, LTD., | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 09-01062-CAG |
| v. | § | |
| | § | |
| BONNIE RENEE ORTIZ and | § | |
| KEVIN PAUL ORTIZ, | § | |
| Defendants. | § | |

### MEMORANDUM OPINION
### GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment filed by Plaintiff, Materials

Products International, Ltd., on January 26, 2010 (the "Motion") (ECF No. 14), the

1

Supplemental Motion for Summary Judgment filed by Plaintiff on July 10, 2012 (the "Supplemental Motion") (ECF No. 51), and the competing Motion for Summary Judgment filed by Defendants on January 26, 2010 ("Defendant's Motion") (ECF No. 15). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the matter is deemed a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts). This matter is referred to this Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. A hearing was held on August 15, 2012 to consider the Motions. Having considered the pleadings and the record in this case, the Court finds that the matter is ripe for summary judgment. *See* Fed. R. Civ. P. 56(c) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056).

## FACTUAL AND PROCEDURAL BACKGROUND

Materials Products International, Ltd. ("Plaintiff") lent Bonnie and Kevin Ortiz ("Defendants"), $100,000 in April of 2006 for the purpose of building and starting a restaurant in Austin, Texas. Defendants personally executed a security agreement for this loan, which granted Plaintiff a lien on the "restaurant known as Nuevo Leon located at 5900 D West Slaughter Lane, Austin, Texas" (ECF No. 14, Ex. A-2). The Security Agreement also included a statement that "no other security agreement, financing statement, or other security instrument covering the Collateral exists" (*id*.). At that time, however, there were two other security instruments that covered the collateral. One was held by the Davila Family Partnership and covered virtually all of Defendants' property as well as all of the property of KBASO, LLC, a corporation owned and started by Defendants for the purpose of operating the restaurant (ECF No. 15, Ex. 2). The other interest was held by the landlord of the property where the restaurant would be located, who was granted a lien on all of the property on the premises belonging to the lessee, KBASO, LLC (ECF

2

No. 15, Ex. 3). Both Defendants' signatures appear on the Partnership's Security Agreement and Defendant Bonnie Ortiz, as Sole Manager of KBASO, LLC, signed the lease that grants the interest to the landlord. Defendants subsequently defaulted on their lease and loans. Upon default, however, the landlord took control of all of the property located at the address of the collateral, and Defendants now owe Plaintiff $81,685.27, including principal, interest, all offsets, and credits.

On March 31, 2009, Defendants filed for bankruptcy in this Court under Chapter 7 in Case No. 09-10792 (*see* ECF No. 1). On July 7, 2009, Plaintiff filed its Original Complaint Seeking Determination of Non-Dischargability of Debts under Bankruptcy Code § 523, alleging that Defendants knowingly made fraudulent misrepresentations in the Security Agreement with the intent that Plaintiff rely on those misrepresentations (ECF No. 1). On January 26, 2010, both Plaintiff and Defendants filed their motions for summary judgment (ECF Nos. 14 and 15). On this same day, however, Defendants also filed a Motion for Judgment on the Pleadings (ECF No. 20). On February 4, 2010, the Court abated the motions for summary judgment pending a ruling on the Motion for Judgment on the Pleadings (ECF No. 21).

On March 10, 2010, a hearing was held on the Motion for Judgment on the Pleadings. On August 27, 2010, the Court granted the Motion, holding that Plaintiff was unable to establish that the debt is non-dischargeable under § 523(a)(2)(A) and that Plaintiff had not sufficiently pled a cause of action under § 523(a)(2)(B) (ECF No. 33).

On September 8, 2010, Plaintiff filed a Notice of Appeal initiating Cause No. A-11-CV-311 LY (ECF No. 37). On March 22, 2012, the U.S. District Court for the Western District of Texas, finding that the Complaint sufficiently alleged causes of action under § 523(a)(2), vacated the ruling for the Defendant and remanded the case to this Court (ECF No. 54).

The case having been remanded, Plaintiff filed a Supplemental Motion for Summary Judgment (ECF No. 51). On August 15, 2012, a hearing was held on the motions for summary judgment, at which time the Court took the matter under advisement.

## PARTIES' CONTENTIONS

Defendants argue in their Motion for Summary Judgment that the Security Agreement was a "statement respecting the debtor's financial condition" and that § 523(a)(2)(A) expressly excludes such statements from serving as a basis for non-dischargeability. (ECF No. 15). Furthermore, Defendants argue that even if Plaintiff's claim is brought under § 523(a)(2)(B), they are still not entitled to summary judgment. In light of the Fifth Circuit's decision in *In re Bandi*, however, both parties agreed at the hearing on August 15, 2012 that this is, in fact, only a § 523(a)(2)(A) case. 683 F.3d 671, 676 (5th Cir. 2012) (holding that "financial condition" as used in § 523(a)(2) means "the overall value of property and income as compared to debt and liabilities" and does not include "a representation that one owns a particular residence or a particular commercial property").

Defendants also argue that Plaintiff is unable to establish that the debt is non-dischargeable under § 523(a)(2)(A) (ECF No. 15). Specifically, Defendants contend that Plaintiff cannot show proof of reliance on the false representation by Plaintiff, proof of resulting damage to Plaintiff, and proof of intent to decieve as to Defendant Bonnie Ortiz. *Id.* Although Defendants say that they did not realize the Security Agreement represented that there were no prior encumbrances on the collateral (or that they were even granting a security interest to Plaintiff), they do not dispute that the representation was made (Affidavits of Kevin and Bonnie Ortiz, ECF Nos. 16 and 17).

Defendants argue that Bonnie Ortiz could not have possessed the requisite intent to deceive because she did not know about the pre-existing lien that belonged to the Davila Family Partnership and relied on her husband's knowledge of the finances when she signed Plaintiff's Security Agreement. They contend that her "honest belief" that the representations made in Plaintiff's Security Agreement were accurate, "even if unreasonable . . . does not amount to an intent to deceive." *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)). Plaintiff pointed out at the hearing, however, that during the Debtors' Meeting with Creditors, Kevin Ortiz stated that he had expected Plaintiff to rely on the documents they had signed in making the loan. Bonnie Ortiz subsequently agreed with everything to which Kevin Ortiz testified.

Defendants argue that Plaintiff cannot prove actual or justifiable reliance. In spite of Kevin Ortiz's admission that Plaintiff did rely on the documents they signed in making the loan, Defendants contend that Plaintiff was indifferent to whether the loan would be secured and to what extent, establishing that it did not rely on the representation that there were no prior encumbrances on the collateral. Defendants' evidence in support of this includes Plaintiff failing to file a financing statement to preserve priority, Plaintiff not making a request for a lien, Plaintiff never discussing the value of the collateral with Defendants, Plaintiff knowing there was no collateral at the address at the time the loan was made, Plaintiff not making an attempt to verify the collateral was owned by Defendants, and having an insufficient description of the collateral in the Security Agreement.

Even if Plaintiff could show actual reliance, Defendants argue that there is no proof the reliance could have been justifiable. Defendants contend that Plaintiff and its President, Mr. Candelas, had sufficient knowledge and experience in business loans that "red flags," such as the

5

Defendants' inexperience and the fact that there was no property at the stated address at that time, should have been raised. Defendants contend Plaintiff was not justified in relying on the statements in the Security Agreement without first performing at least a cursory investigation into their accuracy.

Finally, Defendants argue that Plaintiff would not have received any collateral, even if there had been no prior liens, because Plaintiff's claim would be avoidable by the trustee in the bankruptcy case. At the hearing, Defendants also argued that there were no damages because, even if Plaintiff had a perfected lien, it did not get a landlord subrogation, which allowed the landlord to take all of the collateral upon Defendants' default without further recourse for Plaintiff to foreclose on the collateral. For these reasons, Defendants argue, Plaintiff did not sustain a loss as a result of the representation that there were no prior interests.

Plaintiff argues in its Motion and Supplemental Motion that the evidence establishes that Defendants should be denied a discharge of Plaintiff's debt under § 523(a)(2)(A). (ECF Nos. 14 and 51). Specifically, Plaintiff contends that Defendants knew the collateral was subject to other interests, that they intended and expected to deceive Plaintiff with the false representation, that Plaintiff actually and justifiably relied on the representation, and that Plaintiff suffered a loss of $81,685.27 as a result of it.

## SUMMARY JUDGMENT STANDARD

The Court will grant a motion for summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322–23 (1986).  All facts are reviewed and all inferences drawn in a light most favorable to the non-moving party.  *James v. Sadler*, 909

6

F.2d 834, 837 (5th Cir. 1990).  "As to materiality . . . only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). "The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *Id.* (citing ***Masushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 252 (1986).

## DISCUSSION

Section 523(a)(2)(A) states:

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(2) for money, property, services, or an extension, removal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).  The Fifth Circuit has established that, in order for a claim to be non-dischargeable under § 523(a)(2)(A), a plaintiff must show the following: (1) the debtor made a representation; (2) it was knowingly false; (3) the debtor made the representation with the intent of deceiving the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained losses as a proximate result of the representation. ***In re Mercer***, 246 F.3d 391, 403 (5th Cir. 2001). The Court will address each of these elements in turn.

**(1)** *Defendants made a representation to Plaintiff in the Security Agreement.*

When Defendants entered into the loan agreement with Plaintiff, they represented that no other security interests existed in the collateral by signing the Security Agreement, which stated that "no other security agreement, financing statement, or other security instrument covering the Collateral exists" (ECF No. 14, Ex. A-2). Although Defendants say that they did not realize the documents represented that there were no prior encumbrances on the collateral (or that they were even granting a security interest to Plaintiff), there is no dispute that this representation was made (Affidavits of Kevin and Bonnie Ortiz, ECF No. 16 and 17).

**(2)** *Defendants knew the representation was false.*

The representation made in the Security Agreement was false. Two other security interests in the collateral existed: the Davila Family Partnership interest and the lease of the property (ECF No. 15, Exs. 2 and 3). Defendants' signatures on the Partnership's Agreement and the lease confirm Defendants' knowledge of the existing interests in the collateral and cannot now be disclaimed. During Debtors' Meeting with Creditors, Defendants also acknowledged that they knew the property was already pledged for other debts and did not let Plaintiff or anyone working for Plaintiff know that (ECF No. 14, Ex. B at 14).

**(3)** *Defendants made the representation with the intent of deceiving Plaintiff.*

"Intent to deceive is present if the debtor 'intends or has reason to expect [the creditor] to act or refrain from action in reliance upon the misrepresentation." *In re Mercer*, 246 F.3d at 410 (quoting Restatement (Second) of Torts §531) (alteration in original). "[A]n honest belief," however, "even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive." *In re Acosta*, 406 F.3d at 372 (citing *Palmacci*, 121 F.3d at 788).

8

During the Debtors' Meeting with Creditors, Kevin Ortiz stated that he had expected Plaintiff to rely on the documents he and his wife had signed in making the loan. Bonnie Ortiz subsequently agreed with everything to which Kevin Ortiz testified. Because Kevin Ortiz's testimony shows that he expected Plaintiff to act in the reliance on the misrepresentation, his intent to deceive has been established. Further, Bonnie Ortiz's signature on the Davila Family Partnership security agreement as well as her agreement to all of Kevin Ortiz's testimony rebuts the argument that her "honest belief" could not amount to an intent to deceive. The proof, therefore, shows that both Defendants, through their expectation that Plaintiff rely on the representation, had the requisite intent to deceive Plaintiff.

**(4)** ***Plaintiff did actually and justifiably rely on the representation.***

Plaintiff must show "not only that it *actually* relied on [Defendants'] representation, but also that its reliance was *justifiable*." ***In re Mercer***, 246 F.3d at 411 (citing Restatement (Second) of Torts § 537).

"The standard of *actual reliance* requires *little* of the creditor." *Id.* (quoting ***In re Vann***, 67 F.3d 277, 284 (11th Cir. 1995)). As long as the representation played a substantial part in a plaintiff's decision, actual reliance "need not be the 'but-for' cause of the [plaintiff's] actions." *Id.* (citing Restatement (Second) of Torts § 546). In the present case, Plaintiff has shown its actual reliance through the affidavit of its President, Mr. Candelas, which states that Materials Products, in making the loan, did rely on the representation made by Defendants that there were no pre-existing interests in the collateral. (ECF No. 14, Ex. A). Further, Defendant Kevin Ortiz himself agreed that Plaintiff relied on the documents he signed in giving Defendants the loan.

Defendants' argument that Plaintiff's failure to subsequently check the UCC filing system or file a financing statement shows a lack of reliance is not valid or relevant. These

actions, had they been performed, would have occurred subsequent to the agreement and, therefore, have no bearing on whether reliance occurred at the time the agreement was made. Here, once the agreement was made, Plaintiff had already relied on the statements and agreed to disburse the money. A later inspection of the security interest filings does not indicate whether reliance occurred at the time of the representation.

A creditor who is given a fraudulent misrepresentation of fact is justified in relying upon it, "although he might have ascertained the falsity of the representation had he made an investigation." *Field v. Mans*, 516 U.S. 59, 70 (1995) (quoting Restatement (Second) of Torts § 540). "The illustration is given of a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if he could have 'walk[ed] across the street to the office of the register of deeds in the courthouse' and easily have learned of an unsatisfied mortgage." *Id*. (quoting Restatement (Second) of Torts § 540, Illustration 1). If a falsity, however, would be obvious upon a "cursory examination," or there are warning signs of deceit, a creditor cannot recover if "he blindly relie[d] upon [the] misrepresentation" without performing his own investigation. *Id*. (quoting Restatement (Second) of Torts § 541, Comment a).

Plaintiff's reliance on the representation in the Security Agreement is justifiable. As demonstrated by the example the Supreme Court cites, Plaintiff had no duty to investigate the accuracy of the representations made in the Security Agreement, even if it would have been simple to do so. Defendants have not put on sufficient evidence to establish that there were warning signs that would have required Plaintiff to perform an investigation before entering into the agreement. Defendants' inexperience is not a "red flag" because the Security Agreement made explicitly clear that Plaintiff would be granted an interest in the property as security for the

10

payment of the Note. The Agreement would be clear even to those of no experience in secured borrowing, of which Defendants were not, as evidenced by the existing interests they had granted in the property. For this same reason, the fact that Plaintiff created the Security Agreement and the statement regarding existing interests, does not serve as a warning sign. Further, the lack of physical property at the collateral location at the time the agreement was entered into is not a "red flag" because the loan was given for the purpose of building the restaurant. This would not have given Plaintiff a warning sign that pre-existing interests might exist. Plaintiff was, therefore, justified in its reliance on the representations made by Defendants.

**(5) *Plaintiff sustained a loss as a result of the false representation.***

This last element of causation is satisfied. Defendants' view, that there is no damage or loss because Plaintiff would not have received any of the collateral regardless, is flawed. The damage is the extension of the loan. *See **In re Biondo***, 180 F.3d 126, 135 (4th Cir. 1999) (citing ***In re Campbell***, 159 F.3d 963, 966–67 (6th Cir.1998)). Here, the fraudulent representations were made when the value was given. Had these representations not been made, Plaintiff would not have entered into the Security Agreement, disbursed the $100,000 to Defendants, or be currently owed $81,685.27. The fact that now, having already entered into the agreement, Plaintiff would be in the same position with or without the pre-existing interests, is of no significance.

**CONCLUSION**

IT IS, THEREFORE, ORDERED that the Motion for Summary Judgment filed on behalf of Plaintiff, Materials Products International, Ltd., January 26, 2010 (ECF No. 14) is, hereby, GRANTED.   The Motion for Summary Judgment filed on behalf of Defendants, Kevin and Bonnie Ortiz, on January 26, 2010 (ECF No. 15) is, hereby, DENIED.

A Judgment shall be entered contemporaneously herewith.

# # #